## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| BOY SCOUTS OF AMERICA and | : | Case No. 20-10343-LSS |
| DELAWARE BSA LLC, | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |
| THE HONORABLE BARBARA J. HOUSER (RET.), | : | |
| IN HER CAPACITY AS TRUSTEE OF THE BSA | : | |
| SETTLEMENT TRUST, | : | |
| | : | Civ. No. 24-382-RGA |
| Appellant, | : | |
| v. | : | |
| J.F.H., | : | |
| | : | |
| Appellee. | : | |

## <u>OPINION</u>

Kami E. Quinn, Emily P. Grim, Michael B. Rush, Gilbert LLP, Washington, DC; Anthony M. Saccullo, Mark T. Hurford, Thomas H. Kovach, Mary E. Augustine, A.M. Saccullo Legal, LLC, Bear, DE, attorneys for appellant the Honorable Barbara J. Houser (Ret.), in her capacity as Trustee of the BSA Settlement Trust.

William R. Adams, Dickie, McCamey & Chilcote, P.C., Wilmington, DE; Randall L. Rhodes, Rouse Frets White Goss Gentile Rhodes, P.C., Learwood, Kansas, attorneys for appellee J.F.H.

March 24, 2025

**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before the Court is an appeal (D.I. 1) by the Honorable Barbara J. Houser (Ret.), in her

capacity as Trustee of the BSA Settlement Trust (the "Trustee") with respect to the Bankruptcy

Court's March 11, 2024 Memorandum Order (Bankr. D.I. 11893)[1] (the "Order") which denied

the Trustee's motion seeking to compel J.F.H. ("Appellee") to dismiss a lawsuit against Liberty

Mutual Insurance Company and Travelers Indemnity Company d/b/a St. Paul Surplus Lines

Insurance Company and Gulf Insurance Company (the "Insurers") pending in the United States

District Court for the Western District of Missouri (the "Missouri Action").

Appellee sued Boy Scouts of America ("BSA" or "Debtor"), Heart of America Council

("HOAC") and his abuser, Joseph Mackey.  Prior to BSA's chapter 11 case, Appellee settled

with BSA and HOAC and obtained a judgment against Mackey.  As permitted by Missouri law,

prior to obtaining that judgment, Appellee and Mackey entered into an agreement by which

Mackey's rights against the Insurers (as an alleged co-insured under relevant policies) were

assigned to Appellee.  In the Missouri Action, Appellee seeks to satisfy his judgment against

Mackey by suing the Insurers in equitable garnishment and for bad faith in failing to defend

Mackey in the underlying action.  The Insurers take the position that Mackey is not insured.

The Trustee's motion asserted that a continuation of the Missouri Action is a violation of

an injunction (the "Insurance Entity Injunction") in the order (APP0499-1065) (the

"Confirmation Order") affirming the Debtors' plan of reorganization (APP0001-0498) (the

"Plan").  Pursuant to the Plan, Debtors' rights and the rights of 250 Local Councils under the

policies issued by insurers that have not entered into a settlement agreement with the Debtors

---

[1] The docket of the chapter 11 cases, captioned *In re Boy Scouts of America*, No. 20-10343 (LSS) (Bankr. D. Del.) (and currently on appeal), is cited herein as "Bankr. D.I. __." The appendix (D.I. 16-20) filed in support of the Trustee's opening brief is cited herein as "APP__."

(the "Non-Settling Insurance Companies") were assigned to the Trust for pursuit or settlement by the Trustee. The Insurance Entity Injunction protects the Trustee's ability to maximize the value of those insurance policies and, with certain exceptions, prohibits any person from suing the Non-Settling Insurance Companies. The Insurers are among the Non-Settling Insurance Companies. Appellee contends that he is not bound by the Insurance Entity Injunction.

The Bankruptcy Court denied the Trustee's motion, determining that the Trustee did not prove that Appellee received actual notice of the Debtor's request for the Insurance Entity Injunction and that he is not bound by it. The Trustee filed a timely appeal. (D.I. 1.) The merits of the appeal are fully briefed. (D.I. 15, 29, 31.) Additionally, certain *amici* insurers have filed briefs in support of the Trustee's appeal. (D.I. 21, 33.) I do not believe oral argument would be helpful. For the reasons set forth below, the Order is affirmed.

## I.    BACKGROUND

### A.    The Prepetition Actions

The underlying facts are not in dispute. On January 13, 2016, Appellee sued the Debtor, HOAC, and Mackey, his former scoutmaster and the HOAC medical director, in Missouri state court, alleging that he had been abused as a scout (the "Abuse Action"). (A1681–A1692.) Appellee settled with Debtors and HOAC. Appellee did not settle with Mackey. Prior to trial, on August 6, 2017, Appellee and Mackey entered into a Confidential Agreement to Limit Recovery to Specified Assets pursuant to R.S.Mo. § 537.065. "Mackey agree[d] to assign any and all rights and cause of action he may have against any insurance company and/or policy of insurance" to Appellee in exchange for Appellee's agreement not to execute against any of Mackey's assets "other than any contractual insurance coverage and extra-contractual obligations" assigned under the agreement. On October 5, 2017, the Missouri state court entered

3

a judgment against Mackey and awarded Appellee $20 million in compensatory damages and $100 million in punitive damages. (APP01082.)

On January 21, 2021, Appellee filed suit against the Insurers in Missouri state court. (APP01079-01091.) In his Complaint, Appellee, as Mackey's assignee, alleges equitable garnishment, negligence, breach of fiduciary duties, and bad faith against the Insurers. (APP01084-01091.) Travelers subsequently removed the case to the United States District Court for the Western District of Missouri (the "Missouri District Court") on February 26, 2021. (APP01605-01680.) That same day, Travelers filed a Suggestion of Bankruptcy. (APP01477.) On March 5, 2021, BSA intervened in the Insurance Action and filed its own Suggestion of Bankruptcy. (APP01693.) Both filings noted that, during the pendency of the bankruptcy, section 362 of the Bankruptcy Code enjoined Appellee's action to collect against and "exercise control over property of the [bankruptcy] estate" in the form of "insurance policies and proceeds" issued to BSA. (*Id.*) On March 23, 2021, the parties agreed to a stipulation "staying the case pending resolution of the application of the automatic bankruptcy stay to the claims in this lawsuit." (APP01477; APP01695–01697). The Missouri District Court stayed the Insurance Action until further order of the court. (APP01698–01699.)

Appellee's counsel acknowledged at oral argument before the Bankruptcy Court that he "hired multiple bankruptcy lawyers when BSA declared bankruptcy to say what should I do." (APP01446.) For the better part of two years, from July 2021 to February 2023, Appellee, the Insurers, and the Debtors filed joint status reports with the Missouri District Court every 60 days detailing the status of the BSA bankruptcy proceedings, including notifying the Missouri District Court of the date of the confirmation hearing and entry of the Confirmation Order which referenced the Plan's injunctions. (See APP02434–02458 (eight Joint Status Reports);

4

APP02440 (February 1, 2022 notice of confirmation hearing on February 22, 2022); APP02448-02450 (October 3, 2022 notice of September 8, 2022 confirmation order)).

On April 14, 2023, five days before the Plan's effective date, Appellee asked the Missouri District Court to lift its stay and to remand the case to Missouri state court for further proceedings, asserting that the stay had been terminated because the bankruptcy proceedings were complete, and motions to extend any stay of the Effective Date had been denied. (*See* APP01700.) The Insurers opposed the motion. (APP01876; APP02421.) Liberty argued that Appellee's claims may not proceed in light of the Insurance Entity Injunction. (APP01876; APP02422–02423.)

**B.     The Plan**

On September 30, 2021, following five days of hearings (B.D.I. 6389, 6390, 6391, 6436, 6438), the Bankruptcy Court entered its order approving, among other things, the disclosure statement and the form and manner of notice. (Bankr. D.I. 6438.)   It is not disputed that Appellee was not served with the disclosure statement, the proposed plan containing the Insurance Entity Injunction, or the notice of the confirmation hearing and objection deadline.

On September 8, 2022, the Bankruptcy Court entered the Confirmation Order.  The Plan established the Trust to assume liability for abuse claims, to maximize and administer the assets assigned to it, and to process, liquidate, and pay abuse claims in accordance with certain approved procedures.  (Plan, Art. IV.B.)  Part of the assets assigned to the Trust are claims against Non-Settling Insurance Companies (including claims for conduct constituting "bad faith" or giving rise to extra-contractual damages) as well as Debtors' and the Local Councils' rights under their respective insurance policies.  (Plan, Art. I.A.155, 175; Plan Art. IV.D.1.)  To

preserve the Trust assets for the benefit of the Trust, the Confirmation Order and Plan also

include the Insurance Entity Injunction.  It provides, in relevant part,

> [A]ll Persons that have held or asserted, that hold or assert. ... any
> claim or cause of action ... against any Insurance Company ... in
> any way connected with any Abuse Insurance Policy ... whether
> sounding in tort, contract, warranty, or any other theory of law, ...
> shall be stayed, restrained, and enjoined from taking any action for
> the purpose of directly or indirectly collecting, recovering or
> receiving payments, satisfaction, or recovery with respect to any
> such claim or cause of action, including ... continuing, in any
> matter, directly or indirectly, any suit, action, or other proceeding
> of any kind ... in any forum with respect to any such claim,
> demand, or cause of action against any Insurance Company, or
> against the property of any Insurance Company ....

(APP00130-00131, Confirmation Order ¶ 36.)

### C.     The Motion to Enforce

On July 6, 2023, the Trustee filed a Motion to Enforce the Confirmation Order and Plan

APP01066-01146) (the "Enforcement Motion"), asserting that the Insurance Action fell within

the terms of the Insurance Entity Injunction.  Appellee soon filed his Objection.  (APP01147-

01380.)

Following oral argument, the Bankruptcy Court denied the Enforcement Motion on

March 11, 2024.  The Bankruptcy Court agreed that the Insurance Entity Injunction, which

prohibits all persons from suing a Non-Settling Insurance Company for any claims "based upon,

attributable to, arising out of, or in any way connected with any Abuse Insurance Policy," enjoins

Appellee from continuing to prosecute the Missouri Action.  (Order at 16.)  The Bankruptcy

Court framed the relevant issue as "whether the Insurance Entity Injunction binds [Appellee]."

(*Id*. at 17.)  As the Bankruptcy Court explained, "he is not bound by it if he did not receive

constitutionally sufficient notice."  (*Id*.)  The Bankruptcy Court thus considered whether

6

Appellee received constitutionally sufficient notice. The Bankruptcy Court determined that he did not. First, Appellee's actual knowledge of the BSA bankruptcy cases did not satisfy the requirements of constitutional due process. Second, the Trustee had failed to show that Appellee had actual notice, as required by the Bankruptcy Rules, of the confirmation hearing or the Insurance Entity Injunction. Accordingly, the Bankruptcy Court concluded that Appellee was not bound by the Insurance Entity Injunction.

## II.     JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction to hear an appeal from a final order of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). The Order denying the Trustee's motion to enforce the Plan's Insurance Entity Injunction is a final order.

The Order, dated March 11, 2024, was filed that day. (Bankr. D.I. 11893). The notice of appeal was filed on March 25, 2024. (Bankr. D.I. 11924). Thus, the notice of appeal was timely, as it was filed within the fourteen-day time period allowed for filing an appeal.

The Court "review[s] the bankruptcy court's legal determinations *de novo,* its factual findings for clear error and its exercise of discretion for abuse thereof." *In re Trans World Airlines, Inc.*, 145 F.3d 124, 130 (3d Cir. 1998).

## III.    ANALYSIS

The Trustee argues that Appellee was not entitled to notice of the Plan and confirmation hearing, and therefore the Bankruptcy Court erred in holding that the Insurance Entity Injunction does not bind Appellee. (D.I. 15 at 9.) The Trustee relies upon *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995), which held that known creditors are entitled to actual notice of the bar date, and a known creditor is "one whose identity is either known or reasonably ascertainable by the debtor," meaning the creditor can be identified "through reasonably diligent efforts." *Id.*

7

(internal quotations omitted).  According to the Trustee, "the notice requirements set forth in *Chemetron* and Bankruptcy Rules 2002(b) and 3017(d) apply only to 'known creditors,'" and "Appellee—who settled his Abuse Claim with BSA before the bankruptcy and who holds no claim against the Debtors or the Trust—is not a creditor, let alone a 'known creditor.'"  (D.I. 15 at 9.)  "Thus, to the extent Appellee was entitled to notice at all, his actual knowledge of the BSA bankruptcy cases and the confirmation hearing, combined with the constructive notice he received via the Debtors' extensive noticing campaign, was more than sufficient to meet the Third Circuit's more flexible due process standard."  (*Id.* at 9-10.)

### A.    The Bankruptcy Court Did Not Err in Holding that Appellee Was Entitled to Notice of the Plan Injunction and Confirmation Hearing

Bankruptcy Rules 2002(b)[2] and 3017(d) require service of the plan and disclosure statement, as well as the notice of confirmation hearing, on "creditors."  As Appellee settled his claims against the Debtors prior to the petition date, the Bankruptcy Court agreed with the Trustee that Appellee was not a creditor.  These "uncontested facts," the Bankruptcy Court noted, only "beg the question of what process [Appellee] is due in these circumstances (i.e. form and of what)."  (Order at 18.)  According to Appellants and *amici*, Appellee was due no notice. They argue that while it is "vitally important that creditors who are known to a chapter 11 debtor receive actual notice of the bankruptcy petition, claims bar date, treatment of their claim(s) under a plan of reorganization, and other material pleadings," and that "due process requires the debtor to implement procedures in which the debtor provides notice to unknown creditors" by

---

[2] Bankruptcy Rule 2002(b) provides, in relevant part, that "the debtor, the trustee, all creditors and indenture trustees" must be given "at least 28 days' notice by mail of" (1) the time to file an objection and the time of the hearing to consider approving a disclosure statement, and (2) the time to file an objection to, and the time of the hearing to consider whether to confirm, a chapter 11 plan. *See* Fed. R. Bankr. P. 2002(b).

publication notice, "these two categories of creditors—known and unknown—are the only two categories to whom notice is required to be given." (D.I. 21 at 5-6 (emphasis deleted).) Because "Appellee fits into neither category, ... Appellee was entitled to neither actual nor publication notice of the Plan, Insurance Entity Injunction, or confirmation hearing." (*Id.* at 6.) I disagree, however, because Appellee's status as a non-creditor is not the end of the analysis.

Indeed, the Bankruptcy Rules set forth various requirements addressing this precise situation, that is, a proposed plan that contains an "injunction against conduct not otherwise enjoined under the Code" that applies to an entity that "is not a creditor or equity security holder."

First: "If the plan provides for an injunction against conduct not otherwise enjoined by the Code, the plan and disclosure statement must: (1) describe in specific and conspicuous language (bold, italic, or underlined text) all acts to be enjoined; and (2) identify the entities that would be subject to the injunction." Fed. R. Bankr. P. 3016(c). Similarly, with respect to the notice required for a confirmation hearing with respect to a plan that proposes "an injunction against conduct not otherwise enjoined under the Code, the notice required under Rule 2002(b)(2) shall: (A) include in conspicuous language (bold, italic, or underlined text) a statement that the plan proposes an injunction; (B) describe briefly the nature of the injunction; and (C) identify the entities that would be subject to the injunction." *See* Fed. R. Bankr. P. 2002(c)(3).

Second: "[I]f, under a plan, an entity that is not a creditor or equity security holder is subject to an injunction against conduct not otherwise enjoined by the Code," Bankruptcy Rule 3017(f) applies. It "[extends] the notice requirements of Rule 3017(d)[3] to entities that are not

---

[3] After the disclosure statement is approved, "creditors and equity security holders" must be mailed copies of (i) the court-approved disclosure statement, (ii) the plan (or a court-approved

creditors or interest holders but are affected by the specified type of injunction." 9 COLLIER ON BANKRUPTCY ¶ 3017.04. In such a case, at the hearing on the disclosure statement, "the court must consider procedures to provide the entity with at least 28 days' notice of: (A) the time to file an objection; and (B) the date of the confirmation hearing." Fed. R. Bankr. P. 3017(f)(1). Additionally, "[t]he notice must: (A) provide the information required by Rule 2002(c)(3); and (B) if feasible, include a copy of the plan and disclosure statement." Fed. R. Bankr. P. 3017(f)(2). "Besides requiring notice of the injunction to non-creditor/interest holder entities,"—i.e., the information required under Bankruptcy Rule 2002(c)(3)—"the rule requires that, to the extent feasible, such entities be provided with copies of the plan and disclosure statement." 9 COLLIER ON BANKRUPTCY ¶ 3017.04.

As set forth in the Advisory Committee Notes, Rule 3017(f) was "added to assure that entities whose conduct would be enjoined under a plan, rather than by operation of the Code, and who will not receive the documents listed in subdivision (d) because they are neither creditors nor equity security holders, are provided with adequate notice of the proposed injunction." (2001 Advisory Committee Note). "This rule recognizes the need for adequate notice to subjects of an injunction, but that reasonable flexibility under the circumstances may be required." (*Id.*) "If a known and identifiable entity would be subject to the injunction, and the notice, plan, and disclosure statement could be mailed to that entity, the court should require that they be mailed at the same time that the plan, disclosure statement and related documents are mailed to creditors under Rule 3017(d)." (*Id.*) "If mailing notices and other documents is not feasible because the entities subject to the injunction are described in the plan and disclosure statement by class or

---

summary of it), (iii) notice of the time to file acceptances and rejections of the plan, and (iv) any other information as the court orders." Fed. R. Bankr. P. 3017(d).

category and they cannot be identified individually by name and address, the court may require that notice under Rule 3017(f)(1) be published." (*Id.*)

The Trustee argues, "Neither the Bankruptcy Court nor the Appellee identified any case or rule requiring a specific type of notice to non-creditors to satisfy due process, nor would such a uniform notice requirement make sense." (D.I. 15 at 14.) I disagree. As the Bankruptcy Court noted, the Bankruptcy Rules provide noticing requirements implemented specifically for injunctions, like the Insurance Entity Injunction, that enjoin assertions of claims against non-debtors and are intended to ensure that adequate notice is provided to those whose conduct would be enjoined. Appellee asserted claims against Insurers in the Missouri Action, and there is no dispute that this litigation was known to the Debtor. "The very Suggestion of Bankruptcy [that] Debtor filed in the Missouri Action one year prior to the confirmation hearing establishes Debtor's knowledge of [Appellee]'s identity." (Order at 20.) As the Bankruptcy Court further observed, "a reasonable search of Debtor's files would show that [Appellee] asserted claims against Insurers." (*Id.*) "If Debtor, therefore, intended the Insurance Entity Injunction to enjoin the Missouri Action," the Bankruptcy Court held, "due process required that Debtor send [Appellee] notice of the confirmation hearing and a copy of the disclosure statement and plan." (*Id.*)

*Amici* argue that Bankruptcy Rule 3017(f) "likely required the Bankruptcy Court to consider procedures for informing Appellee of the confirmation hearing, objection deadline, and to the extent feasible, providing him with a copy of the plan," and the "Bankruptcy Court found that BSA's constructive noticing procedures were sufficient." (D.I. 21 at 10) (emphasis added).[4]

---

[4] For example, at the disclosure statement hearing, the Bankruptcy Court ruled that the solicitation materials must be sent to Chartered Organizations, alleged to be non-creditors, because of the asserted impact of the plan on their rights as additional insureds under insurance policies. (*See* B.D.I. 6391 (9/23/2021 Hr'g Tr.) at 124:15-127:3.)

The Trustee similarly argues that under Bankruptcy Rule 3017, the Bankruptcy Court "need only consider procedures for noticing non-creditors potentially impacted by an injunction." (D.I. 31 at 4 n.5.)

The argument is unavailing. The constructive noticing procedures could have been constitutionally sufficient for most purposes. That does not mean they were constitutionally sufficient in relation to Appellee. It is up to those with access to the Debtor's books and records to propose appropriate noticing procedures, ones that comply with the Bankruptcy Rules, where the plan they seek to confirm contains "an injunction against conduct not otherwise enjoined under the Code" to which an "entity that is not a creditor or equity security holder is subject." Fed. R. Bankr. P. 3017(f). As Appellee was just such a known entity, plan proponents should have proposed notice sufficient to meet the express requirements set forth in the Bankruptcy Rules. The Bankruptcy Court's determination is correct that, under the Bankruptcy Rules, Appellee was entitled to, and should have gotten, actual notice of the Insurance Entity Injunction and of the confirmation hearing. That he did not do so means that the Trustee cannot rely upon the Bankruptcy Rules to argue that Appellee received constitutionally sufficient notice.

**B.    The Bankruptcy Court Did Not Err in Holding that Appellee's Actual Notice of the Bankruptcy Case Did Not Carry the Trustee's Burden**

The Trustee and *amici* argue that any due process rights Appellee might be owed were nonetheless satisfied in this case. "The Debtors engaged in an extensive supplemental noticing campaign in December 2021 to inform potential claimants of the bankruptcy, the Plan (including the injunctions set forth therein), the objection deadline, and the confirmation hearing." (D.I. 15 at 12.) Thus, the Trustee contends, Appellee was given constructive notice by publication, which was sufficient to satisfy due process. The Bankruptcy Court acknowledged as uncontested the fact that Appellee had actual knowledge of the BSA bankruptcy cases because of the Suggestions

12

of Bankruptcy filed in the Missouri Action by both Travelers and the Debtor, as well as

Appellee's agreement to stay the Missouri Action during the course of the bankruptcy case.

(Order at 18.)

As the Bankruptcy Court observed, "Cases addressing the sufficiency of notice often

occur in the context of bar dates for filing proofs of claim and known/unknown creditors." (*Id.*

at 18-19) "In the Third Circuit, the law is clear that known creditors are entitled to actual notice

of the bar date; publication notice will not suffice." *Id.* at 18 (citing *Chemetron*, 72 F.3d at 346.)

"A known creditor is 'one whose identity is either known or reasonably ascertainable by the

debtor … through reasonably diligent efforts.'" (*Id.* (quoting *Chemetron*, 72 F.3d at 346).)

"Inadequate notice to a known creditor can serve as a basis for permitting the creditor to file a

late claim and take part in the bankruptcy claims process or for the court to declare that the

discharge and the § 524(a) injunction does not bind the creditor and he may proceed in a non-

bankruptcy forum on his claim." (*Id.* (citing *In re Rental Car Holdings, LLC*, 2022 WL

2760127, at *12 (Bankr. D. Del. July 14, 2022)).) Thus, in a corporate bankruptcy, "actual

knowledge of a bankruptcy case does not neutralize or otherwise cure a debtor's failure to

provide actual notice because lack of actual notice deprives known creditors of the opportunity

not only to make objections, but to participate in the plan process." (*Id.* at 18-19 (citing *In re

Rental Car Holdings*, 2022 WL 2760127, at *13).)

Applying this case law by analogy, the Bankruptcy Court held that "notice of the

bankruptcy case, generally, was not sufficient notice to satisfy [Appellee]'s due process rights in

the context of this matter." (*Id.*) The Bankruptcy Rules "specify the process creditors are due"

and are "directed specifically at injunctions, like the Insurance Entity Injunction, that enjoin

assertions of claim against non-debtors and are intended to ensure that adequate notice is

13

provided to those whose conduct would be enjoined." (Order at 21.) These rules "cannot be sidestepped simply because a party-in-interest is a non-creditor if its rights are impacted by the plan." (*Id.* at 20.) I agree that notice of the bankruptcy case, generally, was not sufficient.

The Trustee counters that the notice which would be required under the Bankruptcy Court's reading is infeasible and would be futile. According to the Trustee:

> Non-creditors have no claims against a debtor and are not entitled to vote on a plan. They need no notice of a voting deadline or a bar date ... Requiring debtors to expend significant time and estate assets to identify and provide *direct notice of plan documents* to all non-creditors whose creative litigation strategies may run afoul of a plan would be—aside from completely infeasible—burdensome, costly, and bring little benefit to the estate. Neither the Bankruptcy Rules nor the case law contemplate such a futile exercise.

(D.I. 15 at 14 (footnote omitted).) It is unnecessary to weigh in on the notice due to "non-creditors whose creative litigation strategies may run afoul of a plan," as that hypothetical is far removed from the facts of this case. Here, the Debtors knew that Appellee had a $120 million judgment and that he was seeking recovery on that judgment against two of the Debtors' insurers; indeed, for months, the Debtors were submitting joint status reports with Appellee in that very same litigation. Under these circumstances, neither constructive notice nor notice of the bankruptcy case generally is sufficient to satisfy due process where the proposed plan injunction seeks to bar Appellee's known, asserted claims.

## IV.   CONCLUSION

It is without question that, in a bankruptcy of this magnitude, due process and adequate notice were not only a central concern but also an overwhelming task; that so few noticing issues have been raised on appeal is a credit to the plan proponents' careful planning and execution, as well as the Bankruptcy Court's exhaustively thorough oversight. Here, a known affected non-creditor fell through the cracks. Both statements can be true at once. The Court agrees that the

14

Trustee failed to carry the burden of showing that Appellee was given notice of the Insurance Entity Injunction or confirmation hearing as required by the Bankruptcy Rules. The Order will be affirmed. A separate order will be entered.